UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **DIGAMO C. JONES** | * | **CIVIL ACTION NO.  14-2823** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

On October 25, 2011, Digamo Jones, f/k/a Carl David Logan, filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments.  (Tr. 196-208).  He alleged disability as of July 1, 2005, because of depression, anxiety, paranoia, and back and lung problems.  (Tr. 217, 232).  At the initial stage of the administrative process, the state agency *granted* his Title XVI claim, but *denied* his Title II claim because of insufficient evidence to determine disability prior to March 31, 2011 – the last day that he was insured for Title II benefits.  (Tr. 94-120, 175-195).  Thereafter, Jones requested and received hearings on May 31, 2012, and February 21, 2013, before an Administrative Law Judge ("ALJ").  (Tr. 25-93).  However, in a May 29, 2013, written decision, the ALJ determined that

Jones was not disabled under the Act. (Tr. 8-20).[1]  Jones appealed the adverse decision to the Appeals Council.  On July 25, 2014, the Appeals Council denied Jones' request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On September 26, 2014, Jones filed the instant pro se complaint for judicial review of the Commissioner's final decision.  In his three sentence brief, plaintiff contends that the ALJ should have given more effect to a 2007 report authored by Kay Studevant.  The matter is now before the court.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

---

[1]  The ALJ expressly declined to disturb the state agency's favorable decision on Jones' application for Title XVI Supplemental Security Income payments.  *Id*.

Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

   (1)   An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

   (2)   An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

   (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

   (4)   If an individual's residual functional capacity is such that he or she can

>       still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### The ALJ's Findings

**I.    Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period.  (Tr. 13-14).  At step two, she found that, through the date last insured, the claimant suffered severe impairments of chronic obstructive pulmonary disease ("COPD"); substance abuse disorder; generalized anxiety disorder; and agitated depression with psychotic features.  *Id*.  Through the date last insured, the ALJ determined that the claimant's impairments, *including substance use disorder*, met listings 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appx 1 (20 C.F.R. § 404.1520(d)), at step three of the process.  *Id*.  However, if the claimant had stopped the substance abuse, then his impairments would not have been severe enough to meet or medically equal any of the

impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 15).

## II. Residual Functional Capacity

The ALJ next determined that, if the claimant had stopped the substance abuse, he would have had (through the date last insured) the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, subject to the following nonexertional limitations: the need to avoid concentrated exposure to gases, fumes, and other pulmonary irritants; the need for simple, routine tasks, with no fast-paced production quotas; the ability to only occasionally adapt to workplace changes and decision-making; plus no more than occasional contact with the public, and frequent contact with co-workers and supervisors. (Tr. 16).

## III. Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Jones was unable to perform his past relevant work. (Tr. 19). Accordingly, she proceeded to step five. At this step, the ALJ determined that Jones was a younger individual, with at least a high school education, and the ability to communicate in English. (Tr. 19-20). Transferability of skills was immaterial. *Id*. The ALJ then observed that, given Jones' vocational factors, and if he had: 1) stopped the substance abuse, and 2) retained an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rule 204.00, Appendix 2, Subpart P, Regulations No. 4. *Id*.

However, because Jones' RFC *did* include nonexertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent his limitations eroded the occupational base for unskilled work at all exertional levels. *Id*. In response, the VE identified the representative jobs of kitchen helper - medium, *Dictionary of Occupational Titles* ("DOT")

Code # 318.687-010; and price marker - light, DOT Code # 209.587-034[2] that were consistent with the ALJ's RFC and Jones' vocational profile. *Id.*[3]

## Analysis

Pursuant to the court's scheduling order, plaintiff was required to submit a brief that *inter alia*, set forth "**specific errors** committed at the administrative level which entitle plaintiff to relief." (Oct. 22, 2014, Sched. Order [doc. # 7]). The order cautioned that "[t]he court will consider only those errors **specifically identified** in the briefs. A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court." *Id*.

The sole, arguably specific contention proffered by Jones in his six line brief is that the ALJ should have given more effect to a 2007 report authored by Kay Studevant.[4] However, the ALJ *did* note Kay Studevant's records, and used them as a basis to find that plaintiff's substance

---

[2] In her decision, the ALJ incorrectly cited the DOT code for the price marker job, and incorrectly characterized it as performed at the medium exertional level. Compare Tr. 20 with 91-92 and 1991 WL 671802.

[3] The VE testified that for the kitchen helper job, there were 191,234 positions nationally and 2,218 positions regionally. (Tr. 20, 91-92). For the price marker job, there were 313,723 positions nationally and 3,894 regionally. *Id*. This incidence of jobs constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[4] The record reflects that Kay Studevant, a licensed mental health counselor, treated Jones on three occasions over a 30 day period in 2007. (Tr. 288-296; 474-482). She assessed Jones with a Global Assessment of Functioning ("GAF") score of 40, which denotes "**[s]ome impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work . . .). *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, DSM-IV, pg. 32.

abuse disorder caused him to be disabled. *See* Tr. 14, 16-17.[5]

The administrative record includes plaintiff's appeal brief that he submitted to the Appeals Council. (Tr. 285-287). In that brief, Jones stated that he did not begin using drugs until 2008, and thus, Kay Studevant's treatment notes from 2007 *pre-date* his substance abuse, and actually document the disabling effects of his impairments *absent* substance abuse. (Tr. 286). Farther down on the same page of his brief, however, plaintiff stated that he left Shreveport in August 2005, withdrew from society, and ended up living in a tent in the woods, using drugs. *Id*. Similarly, at a January 27, 2012, clinical evaluation, Jones admitted to the counselor that he began using cocaine in about 2005 through approximately September 2011. (Tr. 579). In short, there is substantial record evidence to support the ALJ's implicit finding that

---

[5] Under the Social Security Act, an individual will not be considered disabled for purposes of disability insurance benefits if alcoholism or drug addiction was a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. § 423(d)(2)(C). Thus, the Commissioner follows the following process when there is medical evidence of drug addiction or alcoholism:

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535; *see also Brown v. Apfel*, 192 F.3d 492, 499 (5th Cir. 1999).

plaintiff's substance abuse extended throughout the relevant period.[6] Therefore, plaintiff's argument that the ALJ should have accorded greater emphasis to Kay Studevant's findings proves unavailing.

The court also independently reviewed the record for legal error and substantial evidence, but has uncovered no grounds for reversal and/or remand. Because plaintiff continued to engage in substance abuse, through and beyond the date that he was last eligible for disability insurance benefits (March 31, 2011), the ALJ was compelled to consider some evidence that post-dates the period at issue. For example, progress notes from June 2012 and March 2013, during periods of at least partial medication compliance, document GAF scores of 55, i.e., moderate symptoms of impairment.[7] In addition, the ALJ's RFC limiting plaintiff, *inter alia*, to simple, unskilled work, (that she incorporated into a hypothetical to the vocational expert), reasonably contemplated the limitations credited by the medical expert, Steven Sutherland, Ph.D. *See* Tr. 16, 613-616.[8]

---

[6] That is not to say that there were not periods of non-sustained remission or contrary evidence. Indeed, the ALJ noted at least one such period during her discussion of the effects of plaintiff's impairments, absent drug abuse. *See e.g.*, Tr. 15. However, this court reviews the record for substantial evidence – not *de novo*. *See Villa, supra*; *Greenspan, supra*.

[7] A GAF score between 51-60 is defined as "**[m]oderate symptoms** (e.g. flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, no friends, unable to keep a job). (DSM-IV, pg. 32). Although treatment records reflect a GAF score range between 41-50 in January 2012, this was during a period of non-compliance with medication. (Tr. 563). Moreover, at that time, plaintiff had no insurance or medicaid. *Id*.

[8] The Fifth Circuit has held that a hypothetical that includes "restrictions to rare public interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated [the claimant]'s moderate concentration, persistence, and pace limitations such that the hypothetical question was proper." *Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008)(citation omitted). Citing *Bordelon*, other courts in this circuit have held that an RFC limited to simple work reasonably incorporates a moderate or even *marked* limitation in concentration, persistence, or pace. *Reid v. Astrue*, Civil Action No. 10-0237, 2011 WL 4101302 (S.D. Miss. Aug. 15, 2011) *report and recommendation adopted,* 2011 WL 4101277 (S.D. Miss.

Finally, the ALJ's finding that plaintiff retained an RFC for work at all exertional levels is supported by the essentially benign examination findings issued on December 10, 2011, by the consultative physician, Jessica Caraway, M.D. (Tr. 461-463).[9]

### Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's decision that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Under these circumstances, the Commissioner's determination cannot be disturbed on appeal. *Pate v. Heckler*, 777 F.2d 1023, 1027 (5th Cir. 1985).[10] Accordingly,

IT IS RECOMMENDED that the Commissioner's decision to deny disability benefits be AFFIRMED, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of

---

Sept. 8, 2011); *Madrid v. Colvin*, Civil Action No. 12-800, 2013 WL 6641305 (N.D. Tex. Dec. 17, 2013); *Cornejo v. Colvin*, Civil Action No. 11-470, 2013 WL 2539710 (W.D. Tex. June 7, 2013).

[9] In any event, the price marker job – one of the representative jobs identified by the vocational expert – is performed at the light exertional level. *See* discussion, *supra*. Also, the price marker job does not entail exposure to any environmental hazards. *See* 1991 WL 671802.

[10] It is worth noting that the rationale for the ALJ's decision on plaintiff's Title II claim likely would support a finding of "not disabled" for purposes of his Title XVI claim as well. Nevertheless, the ALJ magnanimously declined to disturb the favorable Title XVI decision – no doubt out of concern for plaintiff's continued need for medication and treatment. (Tr. 11, 20).

filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 11th day of January 2016.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE